**Pedro Isreal LOREDO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–00–01353–CR, 14–00–01354–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 10, 2004.

Carmen Castillo Mitchell, Houston, for State.

Terrence A. Gaiser, Houston, for Appellant.

Panel consists of Justices YATES, JOHN S. ANDERSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant entered a plea of not guilty to the offenses of felony murder and arson. He was convicted and the jury assessed punishment at thirty-five years' confinement and a $10,000.00 fine for each offense. In six issues, appellant contends (1) the evidence is insufficient to support his conviction for felony murder and arson; (2) the trial court erred in its instructions to the jury; and (3) the trial court erred in denying his motion to suppress. We affirm.

### BACKGROUND

In February 2000, appellant, his brother, Juan Torres, and Allen Davis worked at a McDonald's restaurant. Appellant and Edson Garza, the night manager for McDonald's, schemed to steal the weekend's receipts from the safe in McDonald's. On Sunday, February 13, 2000, Garza gave his keys to appellant so that appellant could enter the restaurant after it closed. The restaurant had two safes, one large safe and a smaller "drop safe," which was welded onto the large safe. Garza's keys

would open the large safe, but a computerized lock would report who had opened the safe. Garza reported to appellant that the drop safe contained the receipts for Friday, Saturday, and Sunday and could contain as much as $18,000. Appellant, Torres, and Davis decided to attempt to break into the drop safe. The evening before the break-in, appellant purchased a gas torch and propane and oxygen tanks to melt the locks of the safes.

On February 13, 2000, appellant, Torres, and Davis picked up Garza's keys, bought a crowbar and a hammer, and drove to McDonald's. They entered McDonald's about 1:30 a.m. with Davis carrying a backpack containing the torch and gas cylinders, a crowbar, and a hammer. To prevent fingerprints, the trio put tape on their fingertips, but the tape fell off shortly after they entered McDonald's.

The McDonald's office had a tile floor and three tiled walls, and an office in the northeast corner with wooden cabinets above a desk that had wooden drawers and a formica top. The cabinets contained notebooks, work manuals, and other papers. A backpack was hanging on the wall beside the desk. The two safes were in the office. Appellant attempted to pry open the drop safe with the crowbar. After approximately twenty minutes, he realized the crowbar would not work, so he attempted to melt the lock with the propane torch. In his statement to police, appellant said, he did not know whether the papers or wood in the office caught fire while he was attempting to melt the lock. After approximately twenty-five futile minutes with the torch, appellant told his brother, Juan Torres, to purchase bolt cutters at a nearby discount store. Torres made the purchase and returned to the McDonald's. Appellant then broke the lock on the drop safe with the bolt cutters, but discovered another safe inside the

drop safe. Appellant eventually abandoned the smaller safe and told Davis to take the television from the dining room. When Davis reported the television was anchored to the wall, Davis testified that the trio abandoned their burglary attempt and began to "cover their tracks."

According to Davis's testimony at trial, the burglars wiped down the surfaces in the office to "cover" the fingerprints. In his statement to the police, Davis said appellant and Torres were talking about starting a fire. At trial, Davis testified Torres "wanted to just damage something." Davis testified appellant, in a further attempt to "cover their tracks," went outside and broke the drive-through window so that investigators would not know they had keys. Before the trio departed the scene, a fire was intentionally started inside the McDonald's. As a result, the restaurant began to burn and firefighters were called. Upon arriving at the scene, two firefighters entered the restaurant to ensure no one was trapped inside. While searching the restaurant, both firefighters suffered asphyxia and died.

Appellant, Davis, and Torres were charged with felony murder and arson and were tried together. The jury found all three guilty of felony murder and arson.

### SUFFICIENCY OF THE EVIDENCE

In points of error one through four, appellant challenges the sufficiency of the evidence to support his convictions for felony murder and arson. Appellant does not specify whether he is challenging the evidence on legal or factual sufficiency grounds. In his prayer for relief, however, appellant requests reversal and acquittal. Because acquittal is only appropriate when a legal sufficiency challenge is sustained, we will review the evidence under a legal sufficiency standard. *See Collier v. State,* 999 S.W.2d 779, 786 (Tex.Crim.App.1999).

### Standard of Review

■ When reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The jury, as trier of fact, is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). When, as in this case, the trial court's charge authorized the jury to convict on several different theories, we will uphold the verdict of guilt if the evidence is sufficient on any one of the theories. *Rabbani v. State*, 847 S.W.2d 555, 558–559 (Tex. Crim.App.1992).

### Felony Murder

■ In his first two issues, appellant contends the evidence is insufficient to support a conviction of felony murder. Felony murder is an unintentional murder committed in the course of committing a felony. TEX. PEN.CODE ANN. § 19.02(b)(3); *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim.App.1999). The elements of felony murder are: a person (1) while in the course of committing or attempting to commit a felony other than manslaughter or in immediate flight from the commission or attempt, (2) commits or attempts to commit an act clearly dangerous to human life, (3) which causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(3). Under the law of parties, a person may be convicted as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible. TEX. PEN.CODE

ANN. § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PEN.CODE ANN. § 7.02(a)(2).

In point of error one, appellant asserts the evidence is insufficient to prove he is guilty as a principal or party to felony murder because starting the fire was an independent act of one of his co-actors done without his knowledge. In point of error two, appellant asserts there is insufficient evidence that the fire was started in the course of and in furtherance of the burglary.

The witnesses presented conflicting evidence as to how the fire was started. In his statement to the police, appellant stated he may have ignited papers on the desk while using the torch to melt the safe's lock. He also stated that he heard a pop after he left the office and went to punch out the drive-through window. Davis testified that he saw Torres start a fire using a lighter to light papers in the cabinets in the office. The last time Davis and appellant each looked in the office the backpack hanging on the wall was on fire. Andrew Barron, a professor at Rice University, opined the torch was used to ignite wooden cabinets. The fire investigator, Thomas Wood, concluded that the fire was intentionally set in the cabinets.

■ The jury was instructed to find appellant guilty if it found appellant and another person or persons committed or attempted to commit burglary and, while in the course of and furtherance of the commission or attempted commission of burglary, the other person or persons committed an act clearly dangerous to human life, in this case, start a fire. The evidence established that Torres intentionally start-

ed the fire. When a party is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Prystash v. State*, 3 S.W.3d 522, 540 (Tex.Crim.App. 1999).

The record shows appellant used the gas torch in an attempt to melt the safe lock and admitted knowing the restaurant was on fire when they departed. He did not try to put it out or call the fire department. Morris Contreras, a McDonald's employee, testified appellant called him about 4:20 a.m. and calmly told him he wouldn't have to go to work that day because the McDonald's was on fire. Davis testified that he and appellant were concerned fingerprints remained. The fire helped destroy evidence of the burglary. Davis testified that the tape fell off their fingers shortly after they started to work on opening the safes. Davis further testified that appellant gave Torres the lighter that was used to start the fire. When they were getting ready to leave, Davis and appellant wiped down furniture and counters and appellant broke the drive-through window in an attempt to "cover their tracks." Further, arson investigator Wood testified the handle on the large safe was left in the unlocked position. The defendants knew that the large safe's electronics would record the name of Edson Garza entering the safe in the middle of the night because they used his key. Therefore, by setting the fire, the defendants attempted to avoid implicating Garza in the burglary. In addition, the fire destroyed anything that might have been in either safe. Therefore, the fire destroyed any evidence that appellant stole money from the large safe. Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt appellant, while in the course of committing burglary, was a party to lighting a fire, an act clearly dangerous to human life, which caused the deaths of two firefighters. Appellant's first and second issues are overruled.

### Arson

■ In his third and fourth issues, appellant contends the evidence is insufficient to establish either that appellant intended to damage or destroy the building or that the arson occurred in furtherance of the burglary.[1] The jury was instructed that a person commits arson if he starts a fire with intent to destroy or damage any building (1) knowing that it had located within it property belonging to another or (2) when he was reckless about whether the burning would endanger the life of some individual or the safety of the property of another. TEX. PEN.CODE ANN. § 28.02 (Vernon 1994); *see* Act of May 29, 1993, 75th Leg. R.S., ch. 900, § 1.10, sec. 28.02(a), 1993 Tex. Gen Laws 3586, 3628–29 (since amended, current version at TEX. PEN.CODE ANN. § 28.02(a) (Vernon 2003)). The jury charge on arson also included the following instructions on liability as a party:

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if:

- acting with intent to promote or assist the commission of the offense,

---

1. Here again, appellant fails to specify whether the challenge is legal or factual sufficiency. As before, because appellant requests acquittal, we will review these issues under a legal sufficiency standard. *Collier*, 999 S.W.2d at 786.

• he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Mere presence alone will not constitute one a party to an offense.

A person is also criminally responsible for the conduct of another if,

• in the attempt to carry out a conspiracy to commit one felony,

• another felony is committed by one of the conspirators,

• that other felony was committed in furtherance of the unlawful purpose and

• was one that should have been anticipated as a result of the carrying out of the conspiracy.

These instructions comport with the Penal Code sections on Complicity, 7.01(a), and 7.02(a)(2), (b).

■ The jury charge set forth seven alternative application theories of liability for arson.[2] When the State alleges multiple means for the commission of the offense, allegation and proof of any of the means will be sufficient to support the conviction. *Rabbani v. State*, 847 S.W.2d at 558–559. Because we conclude the evidence is legally sufficient to sustain appellant's conviction as a party and co-conspirator to the arson, we do not address the theory he was liable as a principal.

■ If, in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful

purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. TEX. PEN.CODE ANN. § 7.02(b). Conspiracy liability attaches even though the party did not intend for the act to occur as a result of his conduct when the offense was committed in furtherance of the conspiracy and should have been anticipated as a result of the carrying out of the conspiracy. *Id.; see also Wood v. State*, 4 S.W.3d 85, 89 (Tex.App.-Fort Worth 1999, pet. ref'd).

Here, the record shows that Torres started the fire in an attempt to cover the trio's participation in the burglary. Torres discussed wanting to set the building on fire to "damage something." The evidence supports a finding that the parties were reckless about whether the fire would endanger the life of an individual or the safety of another's property. The record further supports the conclusion that the fire was set in furtherance of the burglary to cover the burglars' tracks and appellant should have anticipated the fire as a result of the conspiracy to commit the burglary. Viewing the evidence in the light most favorable to the jury's verdict, we find a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of arson as a party. Appellant's third and fourth issues are overruled.

### JURY CHARGE

■ In his fifth issue, appellant contends the trial court erred in its instruction to the jury on the offense of arson. Specifically, appellant complains of the improper use of a transferred intent instruction. In the application paragraph of the

---

**2.** In abbreviated terms, the seven theories were the following: (1) for reckless endangering, as a principal; (2) for the same, as a party/accomplice; (3) for the same, as a party/co-conspirator to the burglary; (4) for knowing the building contained the property of another, as a principal; (5) for the same under a theory of transferred intent, as a principal; (6) for knowing the building contained the property of another, as a party/accomplice; and (7) for the same as a party/co-conspirator to the burglary.

charge, the trial court instructed the jury to find appellant guilty of arson if it found:

> the defendant, Pedro Loredo, did then and there unlawfully start a fire by igniting a torch with the intent to damage or destroy a safe and knowing that the safe had located within it property belonging to another, and the only difference between what he intended is that different property was damaged[.]

Appellant contends the above instruction is an improper use of the doctrine of transferred intent. The doctrine of transferred intent is codified in section 6.04(b) of the Texas Penal Code, which provides:

> (b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:
>
> (1) a different offense was committed; or
>
> (2) a different person or property was injured, harmed, or otherwise affected.

Prior to section 6.04(b), the doctrine of transferred intent was found in article 42 of the Penal Code, which provided:

> One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed.

Article 42, Texas Penal Code (1925).

■ Section 6.04(b) retains the transferred intent of former article 42 from which it was derived. *Rodriguez v. State,* 953 S.W.2d 342, 350 (Tex.App.-Austin 1997, pet. ref'd); *Salazar v. State,* 642 S.W.2d 534, 535 (Tex.App.-Houston [14th Dist.] 1982, no pet.). Though section 6.04(b) is titled transferred *intent,* it is somewhat of a misnomer because the concept does not address intent or any other *mens rea.* Rather, it depicts an effort by the legislature to criminalize an act that resulted in a different offense than the accused intended to commit. *See Castillo v. State,* 71 S.W.3d 812, 815 (Tex.App.-Amarillo 2002, pet. ref'd). Section 6.04(b) transfers the *mens rea* of a contemplated, but incomplete, offense to the offense actually committed by mistake or accident. *Price v. State,* 861 S.W.2d 913, 916 (Tex.Crim.App. 1993). The rationale is that public policy demands that persons engaged in criminal activity not be exonerated "merely because they accidentally commit a different offense than originally contemplated." *Sargent v. State,* 518 S.W.2d 807, 810 (Tex. Crim.App.1975). Therefore, the intent to commit the contemplated offense transfers to the offense in fact committed. *Ex parte Easter,* 615 S.W.2d 719, 720 (Tex.Crim. App.1981); *Honea v. State,* 585 S.W.2d 681, 685 (Tex.Crim.App.1979).

Here, the evidence is sufficient to submit an instruction to the jury that appellant could be held responsible under the doctrine of transferred intent as prescribed by section *6.04(b)(1)* of the Penal Code, i.e., that the only difference between what appellant intended and what occurred was that a *different offense* was committed. The error in the court's charge occurred because the court instructed the jury under section *6.04(b)(2),* i.e., that the only difference between what appellant intended and what occurred was that *different property* was damaged.[3]

---

**3.** As pointed out by the State, the safe in this case was bolted to the floor and was a permanent part of the building. Gordon Miller testified that the safe was anchored to the floor and if he sold the building, the safe would be sold with it. When personal property is attached to realty and cannot be removed without materially damaging the property, it loses

## Harm Analysis

■ The standard to determine if the harm from the error is sufficient to require reversal depends on whether the error was properly preserved. Where there was a proper objection to preserve the error, the court only looks for "some harm." *Almanza,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Where there was not a proper objection, the appellate court looks for egregious harm. *Id.* Here, appellant properly objected to the charge, so we will review the record for some harm.

■ In conducting a harm analysis, we consider the entire charge, the state of the evidence, including contested issues and the weight of the probative evidence, arguments of counsel, and any other relevant information revealed by the record. *Bailey v. State,* 867 S.W.2d 42, 43 (Tex. Crim.App.1993). The harmfulness of error in the jury charge should be measured, at least in part, against the likelihood that the jury's verdict was based on an available alternative theory of culpability that was not affected by the erroneous portion of the charge. *Margraves v. State,* 56 S.W.3d 673, 680 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

■ First, we look to the jury charge as a whole. *Reyes v. State,* 741 S.W.2d 414, 426 (Tex.Crim.App.1987). The abstract portion of the jury charge correctly stated the elements of arson. *See* TEX. PEN.CODE ANN. § 28.02(a); *Dinkins v. State,* 894 S.W.2d 330 (Tex.Crim.App.1995) (jury charge error that omitted culpable mental state in application paragraph where definition of mental state was correct in abstract portion of charge held not

its character as personal property and becomes part of the realty. *Houston Bldg. Service, Inc. v. American General Fire and Cas. Co.,* 799 S.W.2d 308, 311 (Tex.App.-Houston

harmful). Therefore, this factor weighs against a finding of harm.

The trial court charged the jury with seven alternative application paragraphs for arson: three for principal culpability, three for party culpability, and one for conspiracy. In presenting its evidence, the State focused on appellant's liability as a party to arson, not as a principal. At trial, appellant argued that Torres intentionally set the fire, and he was not culpable as a principal or a party. The state of the evidence was such that the jury could have believed appellant was guilty of arson either as a party, as a principal, or as a co-conspirator. There is sufficient evidence in the record to show that Torres started the fire in an attempt to cover evidence of the burglary. That evidence is sufficient to find appellant guilty as a party. There is sufficient evidence that by attempting to damage the safe, which was part of the building, appellant was guilty of arson as a principal. In its closing argument, the State focused on appellant's liability as a party and argued that the safe was a part of the building and that appellant damaged the building by burning the safe. Appellant argued that he was guilty only of burglary of a building and that Torres set the fire independent of the burglary.

■ Further, a transferred intent instruction enlarges a defendant's criminal responsibility in much the same manner as does a "parties" instruction. *Price,* 861 S.W.2d at 915 n. 5. In addressing charge error with regard to a parties instruction, the Court of Criminal Appeals has found that reversal on charge error is only necessary if the law of parties was actually necessary for the jury to decide the case. *Black v. State,* 723 S.W.2d 674, 675 (Tex.

[1st Dist.] 1990, writ denied). Thus, here the evidence shows the safe was part of the building.

Crim.App.1986). Similarly, the charge error here is only harmful if transferred intent was actually necessary for the jury to decide the case. As stated above, the jury was given seven alternative theories for appellant's liability for arson. Therefore, because the charge on transferred intent was not necessary to the jury's decision, this factor weighs against a finding of harm. Considering the appropriate factors, the trial court's failure to properly apply the law to the facts in the transferred intent application paragraph of the charge was harmless error. Appellant's fifth issue is overruled.

## MOTION TO SUPPRESS

■ In his sixth issue, appellant contends the trial court erred in admitting at the punishment phase his recorded statement in which he confessed to three extraneous offenses. The day after appellant made his initial statement, Officer Colleen Nelson of the Houston Police Department interviewed him. After Officer Nelson read appellant his rights, the following exchange took place.

*Officer Nelson:* It's 5:00 o'clock in the morning is when the robbery occurs. I want to know what you have to say about it. While you say anything I want you to understand this is your opportunity to tell me your part in it, what you had to do with it. An hour from now if you change your mind, an hour from now if you want to talk to me about it again it's too late. This is your chance to tell me what you had to do with the robbery, okay.

*Appellant:* Can I ask for a lawyer now?

*Officer Nelson:* You bet. You bet. You certainly can. And when you ask for a lawyer that means I'm not going to talk to you anymore, okay. I'm not going to talk to you anymore about this. I'm

going to take you back to the jail just exactly where I got you.

*Appellant:* What are we charged for right now?

Appellant then proceeded to discuss the offense with Officer Nelson.

The trial court made the following findings with regard to appellant's motion to suppress:

The next day, Officer Colleen Nelson of the HPD Robbery Division, took Loredo out of the city jail for the purpose of interviewing him about robberies that had occurred at McDonald's restaurants. She conducted the interview on videotape and warned Loredo of his rights under Article 38.22 at the beginning of the tape. He understood those warnings, and although he asked generally about a lawyer, he did not invoke any of his rights.

No one threatened Loredo or coerced him to make a statement, and no one promised him anything to induce him to make a statement. His audio- and video-recorded statements were made voluntarily and are admissible in evidence.

Appellant contends that by asking whether he could ask for a lawyer he invoked his Fifth Amendment right to counsel. He contends Officer Nelson violated that right by continuing the interview.

### Standard of Review

■ We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim. App.2000). Under this standard, the trial court's findings of fact are given "almost total deference"; however, we review the trial court's application of the law to these facts *de novo. Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000). The trial court's ruling will be upheld as

long as it is within the "zone of reasonable disagreement." *Weatherred,* 15 S.W.3d at 542.

 Prior to a custodial interrogation, one must be advised, among other things, that he has a right to consult with an attorney. *Miranda v. Arizona,* 384 U.S. 436, 467–68, 86 S.Ct. 1602, 1624–25, 16 L.Ed.2d 694 (1966). Interrogation must cease immediately if the suspect states that he wants an attorney. *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1628; *Dinkins v. State,* 894 S.W.2d 330, 350 (Tex. Crim.App.1995). A request for counsel must be unambiguous, meaning the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him. *Id.* at 461–62, 114 S.Ct. 2350. Whether a suspect has unequivocally requested an attorney depends on whether he expressed a definite desire to speak to someone, and that person be an attorney. *Dinkins v. State,* 894 S.W.2d at 352. Once an accused invokes his right to counsel, interrogation must cease until counsel has been made available, unless the accused himself initiates further communication. *Minnick v. Mississippi,* 498 U.S. 146, 151–52, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).

After reviewing the dialogue between appellant and Officer Nelson, we conclude appellant's question about a lawyer was not an unambiguous invocation of his right to counsel, and was followed by appellant's continuation of the interview. Further, Officer Nelson was not obligated to stop the interview. Anything less than a clear manifestation of the desire to consult an attorney does not obligate the officer to stop the interrogation. *Id.* Appellant's sixth issue is overruled.

The judgment of the trial court is affirmed.