

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00162-CR

---

SACRAMENTO DE JESUS MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 207th District Court
Comal County, Texas
Trial Court No. CR2020-901, Honorable Gary Steel, Presiding

---

February 9, 2024

## MEMORANDUM OPINION[1]

### Before QUINN, C.J., and PARKER and DOSS, JJ.

Sacramento de Jesus Martinez, appellant, appeals from his conviction of the offense of capital murder. On appeal, he challenges his conviction through three issues, arguing: 1) the trial court erred in failing to suppress his prior statement; 2) the trial court erred in permitting the medical examiner to testify as an expert; and 3) the trial court erred

---

[1] Because this matter was transferred from the Third Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

in denying his motion for mistrial after the State commented on appellant's right to testify and attorney-client privilege. We affirm.

### Background

Appellant and one of the victims, his estranged wife Marisol, had a toxic and abusive relationship. At the time of her death, Marisol had a protective order from appellant. Under the terms of that order, appellant was not to possess a firearm or be near Marisol's residence.

In August 2020, Marisol's body was found in a vehicle on the side of the road. It appeared she had been shot in the head or the mouth. Police located a .38 Special Aguila casing on the seat of the vehicle. Appellant's sister testified she saw appellant that night and "his clothes were dirty and he had blood on them." The sister also identified the car in which Marisol was found as appellant's vehicle and identified the victim as Marisol. Evidence showed appellant had earlier in the evening retrieved a .38 handgun from his father's residence. Appellant admitted to killing Marisol.

A second victim, Daniel Sieger, was found in a wrecked semi-truck. He had been shot four times. Sieger's DNA was found on appellant's jeans and hat and on the driver's seat of the truck. Appellant admitted he shot Sieger. He explained that after he shot Marisol, his vehicle stopped working, so he went to a gas station, took Sieger's truck, and shot him. He admitted he then crashed the truck and ran away.

### Issue One—Motion to Suppress

Appellant first argues the trial court reversibly erred when it denied his motion to suppress his statement because the detective who took his statement was aware he had

an appointed attorney and appellant unequivocally requested his attorney's presence before he provided the statement. We overrule the issue.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We can sustain the trial court's ruling if we determine that the decision is correct under any applicable theory of law and we will reverse the decision only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

At the outset of appellant's interview, officers explained who they were. At that time, the following conversation through a translator took place:

> Appellant: Because the one that told me, the—like, I have is one—they're two lawyers (female gender), right?
>
> Detective: Um-hum.
>
> Appellant: And they had told me that I wasn't going to talk to any, like, detective or the police if she wasn't going to be present.

It is these statements to which appellant refers when he claims he unequivocally requested his attorney's presence prior to questioning. We disagree.

If a defendant invokes his right to counsel, "police interrogation must cease until counsel has been provided or the suspect himself reinitiates a dialogue." *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009); *see Waldron v. State*, No. 03-17-00065-CR, 2018 Tex. App. LEXIS 912, at *11 (Tex. App.—Austin Feb. 1, 2018, pet. ref'd) (mem. op., not designated for publication). However, "[n]ot every mention of a lawyer will suffice, of course, to invoke the . . . right to the presence of counsel during questioning." *Waldron*, 2018 Tex. App. LEXIS 912, at *11. "An ambiguous or equivocal statement with respect to counsel does not even require officers to seek clarification, much less halt their

3

interrogation." *Id.* For determinations regarding whether an accused has invoked his right to counsel, reviewing courts should use an objective standard "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Id.* Under that standard, the accused "must unambiguously request counsel" during an interrogation. *Id.* That is, the accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*; *see Dinkins v. State*, 894 S.W.2d 330, 352 (Tex. Crim. App. 1995) (finding that Supreme Court precedent requires, at a minimum, that a suspect express a definite desire to speak to someone, and that person be an attorney).

We do not find appellant's statements to be a clear, unequivocal request for counsel. At most, it is a statement that a lawyer apparently told him he was not going to talk to police if she were not present. This does not constitute a sufficiently clear request for an attorney that a reasonable police officer would understand. *See Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (an officer is not required to clarify ambiguous remarks). Both the detective and the sergeant who acted as the translator testified at the motion to suppress hearing that they did not understand appellant's statement to be a clear, unequivocal request for an attorney. Several cases support that conclusion. *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (question asking, "Can I wait until my lawyer gets here?" did not state a clear and unambiguous assertion of the right to counsel); *Loredo v. State*, 130 S.W.3d 275, 284-85 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (question at outset of interview asking, "Can I ask for a lawyer now?" was not an unambiguous invocation of right to counsel); *Halbrook v. State*, 31 S.W.3d 301, 302 (Tex. App.—Fort Worth 2000, pet.

4

ref'd) (question asking, "Do I get an opportunity to have my attorney present?" did not constitute clear and unambiguous invocation of counsel); *Flores v. State*, 30 S.W.3d 29, 33-34 (Tex. App.—San Antonio 2000, pet. ref'd) (question asking, "Will you allow me to speak to my attorney before?" was neither clear nor unequivocal about desire to speak to an attorney); *Cooper v. State*, 961 S.W.2d 222, 226 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd (repeated questions asking, "Where is my lawyer? Where is he?" were not unequivocal assertions of the right to counsel).

Further, appellant was properly informed of his *Miranda* rights and continued to speak with officers for some three hours. *See Samuelson v. State*, No. 03-12-00837-CR, 2014 Tex. App. LEXIS 9222, at *6 (Tex. App.—Austin Aug. 21, 2014, no pet.) (mem. op., not designated for publication) (finding appellant's statement that he "probably shouldn't say any more without a lawyer" was not a request for counsel but rather a "statement of opinion regarding the wisdom of continuing to talk"). In fact, after being read his rights, appellant said, "Yes, I want to speak; if not, until I have my attorney." Toward the end of the interview, the detective asked appellant whether his attorney will be mad that he spoke to them. He answered affirmatively and when asked what he thought she would say, he said she is going to say I was really "stupid" to talk to you. He also stated at the conclusion of the interview when asked if he had any more to say, "I already finished hanging myself." Appellant laughed and joked throughout the interview, including when he was explaining that he believed his attorney would tell him he was "stupid" for speaking with officers without her being present.

When asked at trial about submitting to an interview without counsel being present, appellant also indicated he did not need counsel. We find this in his statement that:

"[b]ecause I was thinking about that [having counsel be present] and if it was true that all these people were not dead, then I - - there was no need for me to have an attorney with me."

Considering the totality of the surrounding circumstances as we must, *Waldron*, 2018 Tex. App. LEXIS 912, at \*13, we cannot find appellant's statement constituted an unambiguous request for an attorney. At best, his comments reveal that others thought he needed to remain silent outside the presence of counsel; yet, he was not one of them. So, the trial court did not err in denying appellant's motion to suppress.

### *Issue Two—Medical Examiner's Testimony*

Next, appellant claims the trial court reversibly erred when it allowed the medical examiner to testify as an expert as to the cause and manner of death of Sieger. To support his position, appellant asserts the examiner testified she was retired, was not an expert, and had not maintained her current training in pathology to testify as an expert. We overrule the issue.

Under the Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Appellate courts review the admission of expert testimony for an abuse of discretion. *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable." *State v. Mechler*, 153 S.W.3d

6

435, 439 (Tex. Crim. App. 2005); *see Runels v. State*, No. 03-18-00036-CR, 2018 Tex. App. LEXIS 9995, at *11-12 (Tex. App.—Austin Dec. 6, 2018, pet. ref'd) (mem. op., not designated for publication).

Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: 1) the witness qualifies as an expert by reason of knowledge, skill, experience, training, or education; 2) the subject matter of the testimony is an appropriate one for expert testimony; and 3) admitting the expert testimony will actually assist the fact finder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). These conditions are typically referred to as 1) qualification, 2) reliability, and 3) relevance. *Runels*, 2018 Tex. App. LEXIS 9995, at *12.

Appellant's complaint focuses on the medical examiner's qualifications. He contends that because the examiner herself said she was not an expert and had not kept current with the pathology field following her retirement, she cannot possibly have qualified under the requisite test. Further, he claims he was harmed because the erroneous admission of the testimony affected his substantial rights as she testified to the cause and manner of death as gunshot wounds and homicide. We overrule the issue.

During the *Daubert* hearing, the examiner testified she had twenty-four years of experience in her field and had been retired for eighteen months. She stated that when she retired, she "stopped having anything to do with forensic pathology and did not maintain my credentials or my expertise." She also stated that before she retired, she had been certified as an expert on numerous occasions and that trial courts recognized her as an expert in her field. She agreed that at the time she performed Sieger's autopsy, she was an expert and was certified and qualified to provide causes and manners of death

7

and that she did so for Sieger. However, she testified that since she had retired, she was "not an expert." She said, "I'm here as a fact witness only." She proclaimed she would not offer any expert opinions in the matter.

The State responded that at the time of the Sieger autopsy, the examiner was well-qualified. But, at the time of trial, the State argued, she "decided she's going to be difficult because she doesn't want to play the game anymore and that's unacceptable when two people have been murdered." The State noted the examiner had knowledge and training beyond that of an average person in the field and that had been well-established. The trial court agreed, noting that one does not have to be a self-proclaimed expert to be an expert. The court established her as an expert and further stated, "she clearly was an expert at the time of the autopsy and we don't go stupid because we retire in 18 months."

We see nothing in the record that leads us to the conclusion that the trial court erred in its ruling. The examiner was undisputedly qualified as an expert at the time she conducted Sieger's autopsy. Her self-proclamations that she lost that status upon retirement did not require the trial court to agree, under the circumstances at bar. A fish is a fish if it has all the characteristics of a fish. The same is true of an expert, like the retired medical examiner at bar. And, one must remember that the trial court decides whether a witness is an expert, not the witness. At the very least, the trial court's decision to that effect remained within the zone of reasonable disagreement.

### *Issue Three—Denial of Motion for Mistrial*[2]

Lastly, appellant contends the trial court reversibly erred in denying his motion for mistrial because the State had questioned appellant about his attorney not wanting him to testify to the jury. He claims the improper questioning left the jury with the indelible impression that his attorney did not believe appellant's testimony would help his case and that his testimony would only make his case worse. We overrule the issue.

As this court recently reiterated, "[a] mistrial is an extreme remedy, to be sparingly used for a 'narrow class of highly prejudicial and incurable errors' committed during the trial process." *Perez v. State*, No. 07-23-00203-CR, 2023 Tex. App. LEXIS 6972, at *3 (Tex. App.—Amarillo Aug. 31, 2023, no pet.) (mem. op., not designated for publication); *see Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). It is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Perez*, 2023 Tex. App. LEXIS 6972, at *3. We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Id.*

The question of which appellant complains occurred during recross examination. The State asked appellant, "I believe it's been brought up here that you testified against the advice of your counsel . . . [y]ou were told not to do this, right?"[3] After an objection and discussion at the bench, the trial court denied appellant's motion for mistrial and instructed the jury to disregard the question by the prosecutor as well as any answer that

---

[2] In his appellate brief, appellant sets forth his issue as an error in denying his motion for new trial. However, it is clear appellant is complaining about the ruling on his requested a motion for mistrial, not a new trial. Indeed, his motion for new trial said nothing about the topic encompassed in issue three. As such, we address his complaint as one concerning the trial court's ruling on his motion for mistrial.

[3] During discussion with the court, the State clarified its reasoning for asking this question, explaining it went to appellant's voluntariness and was not intended to address anything more.

9

might have been given. Further, the court reminded the jury "that anything that counsel says is not evidence in the case."

The trial court did not abuse its discretion by denying appellant's motion for mistrial. The question by the State was very brief and the trial court promptly instructed the jury to disregard the question and any answer. The jury is presumed to follow an instruction to disregard. *Tovar v. State*, No. 07-07-0156-CR, 2009 Tex. App. LEXIS 2739, at *6 (Tex. App.—Amarillo April 21, 2009, pet. ref'd) (mem. op., not designated for publication). That presumption is rebuttable, but the appellant must rebut by showing some evidence that the jury failed to follow the court's instruction. *Cantos v. State*, No. 03-14-00585-CR, 2016 Tex. App. LEXIS 1732, at *5-6 (Tex. App.—Austin Feb. 19, 2016, no pet.) (mem. op., not designated for publication). Appellant did not do so here. Given this, we find no abused discretion here. *See Perez*, 2023 Tex. App. LEXIS 6972, at *4-5 (discussing factors to be considered in determining whether a trial court abuses its discretion in denying a motion for mistrial).

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.

10