IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0005
════════════
 
In the 
Matter of H.V.
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 12, 
2007
 
 
            
Chief Justice Jefferson, 
joined by Justice Wainwright and Justice Green, and joined by Justice Hecht as to parts I, III, and V, concurring and dissenting.
 
            
We cannot construe H.V.’s statement that he 
“wanted his mother to ask for an attorney” without first addressing the 
considerable body of precedent on this subject. If we were writing on a clean 
slate, I would agree that the statement invokes his right to counsel. But the 
Supreme Court has held that anything short of an unambiguous request will not 
suffice. Davis v. United States, 512 U.S. 
452, 459 (1994)(“[A] statement either is such an 
assertion of the right to counsel or it is not.”). “Maybe I should talk to a 
lawyer” is not an unambiguous invocation of right to counsel. Davis, 512 
U.S. at 462. Nor does one invoke the 
right by saying “I think I need a lawyer,” or “I can’t afford a lawyer but is 
there anyway I can get one?” ___ S.W.3d ___, ___ (citing Burket v. Angelone, 
208 F.3d 172, 198 (4th Cir. 2000); Lord v. Duckworth, 29 F.3d 1216, 
1219-21 (7th Cir. 1994)). In light of these precedents, H.V.’s statement was ambiguous, and the magistrate properly 
attempted to clarify H.V.’s wishes. Once she did so, 
it became clear that H.V. declined counsel. Because the Court concludes 
otherwise, I respectfully dissent from part III of its opinion. 
I
            
In Flamer v. Delaware, 68 F.3d 710, 725 (3d Cir. 1995), the Third 
Circuit concluded that an adult defendant’s “request to call his mother ‘to 
inquire about . . . possible representation’ . . . was insufficient to trigger 
Edwards under the Supreme Court’s decision in Davis.” Then-Judge 
Alito, writing for the court, concluded:
 
[T]he 
[Davis] Court held that Edwards applies only if a defendant 
‘unambiguously’ requests counsel. ‘If a suspect makes a reference to an attorney 
that is ambiguous or equivocal in that a reasonable officer in light of the 
circumstances would have understood only that the suspect might be 
invoking the right to counsel,’ Edwards does not come into play. Here, 
Flamer’s request to telephone about possible representation ‘failed to meet the 
requisite level of clarity’ that Davis demands.
 
 
Id. (citations 
omitted). Although Flamer involved a request made at an arraignment, 
rather than prior to custodial interrogation, the court’s analysis of 
Davis and Edwards would be equally applicable in either context. 

            
The precedent in this area is muddled,[1] but the Supreme Court’s directive seems 
relatively clear, and lower courts have followed suit. It is hard to see a 
distinction between Flamer’s request to call his mother “to inquire about . . . 
possible representation” and H.V.’s statement that he 
“wanted his mother to ask for an attorney.” Id.; see also Davis, 512 U.S. at 459; 
State v. Hyatt, 566 S.E.2d 61, 71 (N.C. 2002) (defendant’s request to 
speak to his father and statement that his father wanted him to have an attorney 
present “[did] not, as a matter of law, constitute an unambiguous request for 
counsel”). The Court has enumerated examples of statements that courts have held 
are insufficient to invoke the right to counsel as well as examples of those 
that sufficed. The statement here is more like the former examples[2] than the latter. As Davis held, 
interrogations need not cease in the face of an ambiguous or equivocal reference 
to an attorney that “might” invoke the right to counsel. Davis, 512 U.S. 
at 459; see also Dinkins v. State, 894 S.W.2d 330, 351 (Tex. Crim. App. 
1995) (“An invocation must be clear and unambiguous; the mere mention of the 
word ‘attorney’ or ‘lawyer’ without more, does not automatically invoke the 
right to counsel.”). Unless a suspect actually requests an attorney, questioning 
may continue. Davis, 512 U.S. at 462. 
            
The magistrate appropriately attempted to clarify H.V.’s ambiguous statement. Davis, 512 U.S. at 461 
(holding that, “when a suspect makes an ambiguous or equivocal statement it will 
often be good police practice for the interviewing officers to clarify whether 
or not he actually wants an attorney” but declining to adopt a rule requiring 
clarifying questions). She testified that, before administering the warnings, 
she asked the investigating officers to leave the room, and her conversation 
with H.V. was private. She advised him of his rights and “made sure that he 
understood” them and that he “understood the English language and spoke it and 
read it. I made sure he understood what he was there for.” H.V. said he 
understood his rights. He then asked to talk to his mother. The magistrate 
testified:                                                        
        
Magistrate:    
I explained to him that at that time that we were here in the, we were here 
down at the facility and that Detective Carroll was asking for him to make a 
statement and that he had essentially three options at that time: That he could 
ask for an attorney, that he could make a statement to Detective Carroll, or he 
could choose not to make any statement.
 
Ass’t D.A.:     Did you 
inform him he had the right to hire an attorney if he chose to do so?
 
Magistrate:    
I did.
 
Ass’t D.A.:     Did you 
inform him he had the right to have counsel appointed for him if he couldn’t 
afford one?
 
Magistrate:    
I did. 
 
Ass’t D.A.:     What was 
his response to this information?
 
Magistrate:    
He said he wanted to talk to his mother and wanted her to ask about an 
attorney.
 
Ass’t D.A.:     And what 
was your response as a magistrate to that question?
 
Magistrate:    
I told him that at this time his mother was not present, that we needed to 
finish up what we were doing there, and that meant that he needed to make a 
decision about asking for an attorney or making a statement or not making a 
statement; that those were the three things at that point that we could take 
care of at that point. 
            
. . .
 
Ass’t D.A.:     Knowing 
that, what did you do after the Respondent asked about talking to his mother 
about an attorney?
 
Magistrate:    
I told him, we also had a brief conversation, he asked, well, I explained to him 
that if he chose not to make a statement at that time, that was fine, that he 
was currently being held in custody for tampering with physical evidence, and 
that he was being under investigation for murder, and that if he wanted to speak 
to his mother, that he would be taken back down to the Juvenile facility at that 
time. I said, I don’t know what timeframe would be 
involved as far as your being able to see your mother. 
 
Ass’t D.A.:     Once you 
briefed him on those rights, what was his response?
 
Magistrate:    
That he wanted to make a statement to Detective Carroll.
 
Ass’t D.A.:     Did he 
mention anything about his age?
 
Magistrate:    
He did say I’m only 16, and I said, I understand that, H., but I think you’re 
very well-educated and articulate, and you understand everything, and if you 
want to ask for an attorney, I think you can do that. I mean, you have the right 
to do that for yourself. 
            
. . .
 
Ass’t D.A.:     And what 
was his response?
 
Magistrate:    
That he would talk to Detective Carroll.
 
Ass’t D.A.:     And were 
you fully convinced that that was his intention at that time?
 
Magistrate:    
If I hadn’t been fully convinced that that was what he wanted, I wouldn’t have 
let him do it.
 
 
            
Her notes reflected the following:
 
[H.] was 
very articulate and appeared well-educated. He was very aware of his 
circumstances and the charges. After reading the first mag warning, I explained that he could ask for an attorney, 
choose not to make a statement, or choose to speak to Detective Carroll. He 
stated he wanted to call his mother. I told him that at this time that was not 
an option. He said he wanted his mother to ask for an attorney. I explained to 
him that he would have to be the one to ask for an attorney. He stated, but I’m 
only 16. I said yes, but if he wanted an attorney, he would have to ask for one. 
I again told him he had three options: Ask for an attorney, make a statement to 
Detective Carroll, or not to make a statement. At that time, he said he would 
speak to Detective Carroll.
 
 
            
Thus, by the end of the exchange, H.V. made it clear that he wanted to 
speak to law enforcement officers and thereafter gave a statement. He again met 
privately with the magistrate, who read his statement and listened as H.V. 
subsequently read it aloud. He made a single correction—adding the word “shoes” 
where it had been omitted—and signed the statement. At no time during this 
process did he unambiguously invoke his right to counsel. 
II
            
H.V. admits that he knew of his rights, having been advised of them 
earlier in the day, but contends that he did not know how to invoke them. He 
urges the Court to examine the “totality of the circumstances,” including his 
age, when deciding whether his requesting his mother to seek counsel should be 
construed as his own request. The Court, however, sidesteps the issue, noting 
only that because it agrees with the court of appeals’ ultimate conclusion, it “need not decide in this case whether the 
court of appeals erred in considering H.V.’s age.” By 
failing to decide whether H.V.’s age may be 
considered, however, the Court does a disservice both to H.V. and to future 
litigants: the Court does not explain why taking H.V.’s age into account would apparently not affect the 
outcome here,[3] nor does the Court provide any guidance 
to courts grappling with this issue in future cases. 
            
While I agree that it is “not entirely clear which rule applies,” ___ 
S.W.3d at ___, I would hold that a juvenile’s age may be taken into account when 
deciding whether he invoked his right to counsel. In Fare v. Michael C., 
442 U.S. 707, 725 (1979), the Supreme Court held that courts evaluating a 
juvenile’s waiver of his Miranda rights must examine the totality of the 
circumstances, including a “juvenile's age, experience, education, background, 
and intelligence, and . . . whether he has the capacity to understand the 
warnings given him, the nature of his Fifth Amendment rights, and the 
consequences of waiving those rights.” 
            
 Davis, decided after Fare, 
established an objective test for invoking those rights. Davis, 512 
U.S. at 459. One of the driving 
forces behind Davis’s objective test, however, was the 
desire to provide a clear rule for police officers during interrogations. The 
Supreme Court balanced the Edwards test with an adult suspect’s 
invocation of his rights and concluded:
 
In 
considering how a suspect must invoke the right to counsel, we must consider the 
other side of the Miranda equation: the need for effective law enforcement. 
Although the courts ensure compliance with the Miranda requirements 
through the exclusionary rule, it is police officers who must actually decide 
whether or not they can question a suspect. The Edwards rule — 
questioning must cease if the suspect asks for a lawyer — provides a bright line 
that can be applied by officers in the real world of investigation and 
interrogation without unduly hampering the gathering of information. But if we 
were to require questioning to cease if a suspect makes a statement that 
might be a request for an attorney, this clarity and ease of application 
would be lost. Police officers would be forced to make difficult judgment calls 
about whether the suspect in fact wants a lawyer even though he has not said so, 
with the threat of suppression if they guess wrong. We therefore hold that, 
after a knowing and voluntary waiver of the Miranda rights, law 
enforcement officers may continue questioning until and unless the suspect 
clearly requests an attorney.
 
 
Id. 
at 461. But under Texas law, magistrates, not law enforcement 
officers, give Miranda warnings to juveniles.[4] Tex. Fam. Code § 51.095. To be admissible in 
evidence, statements given by juveniles must be signed in the presence of the 
magistrate, generally without any law enforcement officers or prosecuting 
attorneys present.[5] Id. § 51.095(a)(1)(B)(i). In contrast to warnings 
administered by police officers during the heat of interrogation, then, juvenile 
warnings administered before police questioning ever begins, by an experienced 
magistrate who is obviously aware of the juvenile’s age, do not raise the same 
concerns cited by the Davis court. In this context, a magistrate’s 
consideration of a suspect’s age would not “unduly hamper[] the gathering of information.” Davis, 512 
U.S. at 461. 
            
Moreover, Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), 
in which the Supreme Court held that a suspect’s age or experience need not be 
considered in determining whether he is in custody, does not necessarily 
foreclose consideration of a juvenile’s age when determining whether he invoked 
his right to counsel. Yarborough did not overrule Fare, and at 
least one Justice who joined Yarborough noted that age could be 
considered as part of the objective custody inquiry.[6] See Yarborough, 541 U.S. at 669 
(O’Connor, J., concurring) (noting that, despite objective nature of inquiry, 
“[t]here may be cases in which a suspect’s age will be relevant to the ‘custody’ 
inquiry under Miranda”); see also People v. Roquemore, 31 Cal. Rptr. 3d 
214, 223 (Cal. Ct. App. 2005) (applying Fare factors but nonetheless 
concluding that eighteen-year-old’s statement “Can I 
call a lawyer or my mom to talk to you?” was not an unambiguous request for 
counsel); Dinkins, 894 S.W.2d at 351 (applying Davis but 
nonetheless concluding that “[w]hen reviewing alleged invocations of the right 
to counsel, we typically look at the totality of the circumstances”). While 
Davis, silent on whether Fare’s factors should come into play, 
gives somewhat mixed signals on this point, I would hold that age should be 
considered when evaluating a juvenile’s invocation of his right to counsel, 
particularly in light of the statutory warning procedure required for juveniles 
in Texas.
III
            
But even if age is a pertinent consideration, the circumstances of this 
case—H.V.’s youth, his Bosnian extraction, and his 
lack of prior experience with the police—do not compel a different result. The 
magistrate testified that H.V., then three months shy of his seventeenth 
birthday, was “very articulate and appeared well educated.” Cf. 
Yarborough, (O’Connor, J., concurring) (noting that “17 1/2-year-olds vary 
widely in their reactions to police questioning, and many can be expected to 
behave as adults”). She noted that he read and understood the English language 
and was a junior at a local high school. He had earlier that day been taken into 
custody for another interrogation, and, after having his rights explained to him 
at that time, chose to waive them. In this case, then, none of these factors 
weigh in favor of a conclusion that H.V. invoked his right to counsel. 
            
One can imagine circumstances, however, in which a defendant’s youth would be significant. Here, H.V. was near majority. 
What if he had been six years old? See Barry C. Feld, Juveniles' Competence to Exercise Miranda Rights: 
An Empirical Study of Policy and Practice, 91 Minn. L. Rev. 26, 99 (2006) (noting 
that while juveniles aged sixteen and older exhibited an understanding of 
Miranda warnings on a par with adults, juveniles under fifteen frequently 
misunderstood warnings). Ignoring this fact would lead to the ironic result that 
the younger the accused, the less likely he would be to invoke his 
constitutional rights. Davis drew a “bright line” between 
suspects who might be asking for a lawyer and those who actually do, but that 
test leaves room for consideration of a juvenile’s age. 
IV
            
Finally, both H.V.[7] and the Court 
erroneously conclude that H.V.’s age “at least 
hindered if it did not prevent him from [hiring private counsel] himself.” ___ S.W.3d at ___. We have long recognized (and never 
disavowed)[8] that minors may retain counsel in 
criminal proceedings, and such contracts are neither void nor voidable. Askey 
v. Williams, 11 S.W. 1101, 1101 (Tex. 1889) (“The contracts of an infant for 
necessaries are neither void nor voidable, and we are of opinion that the 
services of an attorney should be held necessary to an infant, where he is 
charged by an indictment with crime. His life or his liberty and 
reputation are at stake, and it would be unreasonable to deny him the power to 
secure the means of defending himself.”); see also Johnson v. Newberry, 
267 S.W. 476, 478 (Tex. Comm’n App. 1924, judgm’t adopted) (noting that “‘reasonable attorney fees in 
defense of a criminal action brought against an infant are necessaries’” but if 
agreed-upon price is excessive, contract is enforceable only to the extent of 
“‘a just compensation for the necessaries received by him’”) (quoting Askey, 11 S.W. at 1101). In any event, it is not 
necessary to revisit our established caselaw, because 
the particular warning given here advised H.V. (as mandated by the Family Code) 
that he had a right to appointed counsel if he was “unable to employ an 
attorney.” Tex. Fam. 
Code § 51.095. Thus, 
even if H.V. believed that his age prevented him from hiring private counsel 
himself, he was told that he could speak with a court-appointed attorney. 
V
            
I agree that we have jurisdiction over this case and join parts I and II 
of the Court’s opinion. I would not reach the suppression issue decided by the 
Court in part IV. Because H.V. did not unambiguously invoke his right to 
counsel, I would reverse the court of appeals’ judgment suppressing the 
statement and the gun and therefore dissent from that part of the Court’s 
judgment that holds otherwise. 
 
 
______________________________
Wallace B. 
Jefferson 
                                                                                                
Chief Justice 
 
OPINION 
DELIVERED:     April 11, 2008                                      
  








[1] 
For example, one court concluded that “Can I ask for a lawyer now?” was not an 
unambiguous request for counsel, while another held that “Can I call my 
attorney?” was. Compare Loredo v. State, 130 
S.W.3d 275, 284-85 (Tex. App.—Hous. 
[14 Dist.] 2004, pet. ref’d) (deciding that party’s “question about a lawyer 
was not an unambiguous invocation of his right to counsel”), certificate of 
appealability denied, Loredo v. Quarterman, No. H-06-2138, 2007 U.S. Dist. LEXIS 63208, 
49-51 (S.D. Tex. Aug. 23, 2007) (concluding, on habeas review, that Texas state 
court’s decision did not violate “established Supreme Court precedent or constitute[] an unreasonable determination of the facts in 
light of the evidence presented in state court”) with United States v. 
De la Jara, 973 F.2d 746, 752 (9th Cir. 1992) 
(holding that question “clearly invoked the right to counsel”).  

[2] 
To those, I would add: Clark v. Murphy, 331 F.3d 1062, 1066 (9th Cir. 
2003) (holding that “I think I would like to talk to a lawyer” was ambiguous; 
thus, on habeas review, Arizona court’s determination neither violated Supreme 
Court precedent nor was objectively unreasonable); Diaz v. Senkowski, 76 F.3d 61, 63 (2d Cir. 1996) (concluding 
that “I think I want a lawyer” and “[d]o you think I need a lawyer” were 
ambiguous within the meaning of Davis); United States v. Ogbuehi, 18 F.3d 807, 813 (9th Cir. 1994) (noting that 
defendant's question, “Do I need a lawyer” or “Do you think I need a lawyer” did 
not “rise to the level of even an equivocal request for an attorney”).

[3] 
The Court’s conclusion that H.V.’s age “at least 
hindered if it did not prevent him” from retaining private counsel suggests 
that, in fact, the Court does take his age into account to conclude that he 
invoked his right to counsel. ___ S.W.3d at 
___.

[4] 
Thus, the standard must be one of a “reasonable magistrate,” not a “reasonable 
police officer.” That is, the Davis test 
for juveniles in Texas must be whether the statement is 
“sufficiently clear[] that a reasonable [magistrate] in 
the circumstances would understand the statement to be a request for an 
attorney.” Davis, 512 U.S. at 459. 

[5] 
A magistrate may require the presence of a bailiff or a law enforcement officer 
if the magistrate determines that the presence of the bailiff or law enforcement 
officer is necessary for the personal safety of the magistrate or other court 
personnel, provided that the bailiff or law enforcement officer does not carry a 
weapon in the presence of the child. Tex. Fam. Code § 51.095(a)(1)(B)(i). 

[6] 
The Fare court explained at length why, contrary to the California 
Supreme Court’s conclusion, a request to speak to his probation officer did not 
invoke a juvenile’s right to counsel; if the juvenile’s age had been irrelevant 
to the inquiry, certainly the Supreme Court would have said so. Fare, 442 
U.S. at 723-24 (“[S]ince a probation officer does not 
fulfill the important role in protecting the rights of the accused juvenile 
that an attorney plays, we decline to find that the request for the 
probation officer is tantamount to the request for an attorney.”) (emphasis 
added).  

[7] 
H.V. asserts that his statement to the magistrate was “an effort to explain . . 
. that, while he desire[d] counsel, he [was] incapable of obtaining an attorney 
being merely a sixteen year old.”

[8] 
It is curious that the Court, citing only court of appeals and federal district 
court opinions, questions whether Askey is 
still good law. Not only is Askey precedent 
from our Court, but we reaffirmed the rule thirty-five years later in Johnson 
v. Newberry, and leading commentators cite Askey as accurately stating the Texas rule. 
See William V. Dorsaneo III, et 
al., 14 Texas Litigation Guide § 210A.04 
(2007); 1 Barry P. Helft & John M. 
Schmolesky, Texas Criminal Practice Guide 
§ 1.101 (2008); John D. 
Montgomery, et al., 3 Texas Family Law: 
Practice & Procedure U2.03 (2d ed. 2007). And the venerable policy 
the rule promotes is as forceful today as it was in 1889. Thus, it is unclear 
why a minor’s constitutional right to counsel, recognized by the Supreme Court 
in 1967, would weaken, rather than strengthen this rule. Nor is this tenet 
affected by a parent’s duty to pay for such necessaries. See Joseph M. Perillo, 7 Corbin on Contracts § 27.8 (rev. ed. 
2002) (noting that “[a]n infant is liable in quasi contract for necessaries 
furnished the infant” and “[t]he basis of this liability is thus considerably 
different from the liability of parents for necessaries furnished their 
children”).