**Opinion issued April 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00399-CR

———————————

**DENE RAY MCCARTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1391752**

---

## MEMORANDUM OPINION

Appellant, Dene Ray McCarter, was found guilty by a jury of the offense of murder. The jury assessed Appellant's punishment at 52 years in prison. On appeal, Appellant raises two issues. He contends that the evidence was insufficient

to support the judgment of conviction, and he asserts that the trial court committed jury charge error.

We affirm.

## Background

Appellant and Tanya began a dating relationship in 2012. In May 2013, Tanya ended the relationship. Appellant was upset by the break up. Tanya later stated that Appellant told her "that he wouldn't let nobody else have me."

Following the break up, Appellant would come to Tanya's apartment, but she would not let him in her home. Tanya always kept her front door locked; however, on the night of June 16, 2013, Tanya's front door was unlocked. That night, Tanya was at home with four of her children: William (age 19); Keara (age 18); Prezton (age 16); and Chyna (age 12). Also in the home were the children's cousin, Keiron (age 19), and William's friends, Brandon and Conrad.

Around 9:00 p.m., Appellant entered Tanya's home through the unlocked front door without knocking and without being invited. Appellant went directly to Tanya's bedroom where she was with her daughter, 12-year-old Chyna. Tanya asked Appellant to step outside to talk. Tanya began to walk to the bedroom door with Appellant behind her. Appellant pulled a knife from his pocket, grabbed Tanya from behind using his left arm, and began stabbing her in her upper body using his right arm.

2

Chyna screamed for help and grabbed Appellant's right arm, using both her hands. Appellant swung his arm to make Chyna release her grip. In the process, Appellant cut Chyna's arm with the knife. Tanya was also fighting back, pulling his arm. Tanya fell to the bedroom floor and used her feet to push Appellant. Appellant stood over Tanya and continued to stab her. Hearing Chyna screaming, Prezton, William, and Keiron ran to the bedroom. Prezton jumped on Appellant. They lost their balance and fell into the closet, breaking the closet door. William and Keiron then began punching Appellant. At some point during the altercation, Appellant stabbed Prezton three times: once in the neck and twice in the chest. Prezton also received a cut on his hand.

Tanya left the bedroom followed by Chyna. Appellant walked quickly from the bedroom, left the apartment, and drove away in his car. Keara saw Appellant put the knife in his pocket as he left.

Prezton followed Appellant out of the apartment but collapsed outside on the sidewalk. Prezton died at the scene from his stab wounds. Tanya was taken to the hospital by life-flight helicopter. Although Appellant had stabbed her 27 times, Tanya recovered from her injuries.

The police used Appellant's cell phone to help track him down. He was eventually arrested when the police located him in the backseat of his brother's car. Once in custody, Appellant gave a video-recorded statement. In his statement,

3

Appellant admitted to stabbing Tanya, but he denied stabbing anyone else. Appellant stated that, when Prezton and the other two boys entered the bedroom, they jumped on him. Appellant admitted that he took action to get the young men off of him. Appellant demonstrated numerous times in the video how, to remove Prezton and the other two young men, he made a backwards slashing motions towards them with the hand holding the knife.

Appellant was charged with the offense of Prezton's murder. The jury found Appellant guilty as charged in the indictment and assessed Appellant's punishment at 52 years in prison. Appellant now appeals, raising two issues.

## Sufficiency of the Evidence

In his first issue, Appellant asserts that the evidence is not sufficient to support the judgment of conviction.

### A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct.

2781, 2789 (1979).  *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt.  *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact finder resolved any conflicts

in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B. Legal Principles**

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2011). Based on the indictment in this case, the State was required to prove, beyond a reasonable doubt, either (1) that Appellant intentionally or knowingly caused Prezton's death by stabbing or cutting him with a knife or (2) that Appellant intended to cause serious bodily injury to Prezton and committed an act clearly dangerous to human life, namely, stabbing or cutting Prezton with a knife, which caused Prezton's death. *See id.*

A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2011). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b) (Vernon 2011). Intent and knowledge are fact questions for the jury and are almost always proven through evidence of the circumstances surrounding the crime. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999). A jury may rely on collective common sense and common knowledge when determining intent. *Rodriguez v. State*, 90 S.W.3d 340, 355 (Tex. App.—El Paso 2001, pet. ref'd). Intent also may be inferred from the circumstantial evidence surrounding the incident, which includes acts, words, and conduct of the accused. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon 2005); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

## C.    Analysis

On appeal, Appellant asserts that the evidence was not sufficient to show that he possessed the requisite intent to commit the offense of murder. We disagree.

Appellant points out that the evidence showed that no one saw Appellant stab Prezton. In his statement, Appellant said that he had gone to Tanya's home to speak to her. However, he was angry because she had ended their relationship and

7

he knew that she was dating another man. Appellant stated that, once at her home, he "snapped" and began stabbing Tanya with the knife that he had in his pocket. Appellant told the police that he did not know that he had stabbed anyone other than Tanya.

In his brief, Appellant relies on evidence, including Tanya's testimony, indicating that Appellant had a loving and caring relationship with her children. He also cites evidence showing that, on the night of the attack, he had opportunities to harm Tanya's children when he entered the apartment but did not harm them. He points to the evidence showing that he walked passed Tanya's children when he entered the apartment without harming them. He also points to the evidence showing that, although Chyna was cut on her arm when she grabbed his arm to stop him from stabbing Tanya, Appellant did not attack Chyna. He further points out that he did not harm William or Keiron, even though they fought with him that night. He indicates that he showed restraint in not harming William Keiron because he sustained a severe cut to his hand at some point during the struggle.[1]

In his brief, Appellant asserts as follows:

---

[1] To the extent that Appellant is suggesting that someone else had a knife that cut his hand that night, the evidence showed that the only knife reported being seen was Appellant's knife. No other knives were recovered from the scene. In addition, during his statement, Appellant acknowledged that he possibly cut himself while he was stabbing Tanya.

All of the evidence offered at trial proves that the Appellant's attack on Tanya . . . was vicious, brutal, and intentional—but that is all that it proves. There is no evidence that the Appellant had any intention to hurt any other person that night; and most certainly—none of Tanya's children. The Appellant had every opportunity possible to maim, slash, and scar Tanya's children—but he did not act on those opportunities. They were not his targets. He was a scorned lover seeking revenge on one person. Somewhere in the fight, though no one knows where or how—[Prezton] is stabbed, and dies soon thereafter.

In his video-taped statement, Appellant stated that Prezton, William, and Keiron had jumped on him to protect Tanya. Appellant admitted that he had made backward slashing motions with his right hand, which Chyna testified held the knife, to get Prezton and the other two young men off of him. Appellant demonstrated the backward slashing motions in the video, showing how he thrust the knife backwards to break free. Keara, William, and Chyna testified that it was Prezton who had jumped on Appellant. In short, the evidence showed that, while Tanya was initially Appellant's intended target, once Prezton jumped on him, foiling the attack, Appellant's attention turned to the person on his back: Prezton. Appellant admitted he used the knife, slashing back at Prezton to remove him. Once he broke free, Appellant quickly left the apartment and drove away.

The assistant medical examiner, Dr. Darshan Phatak, testified that Prezton's autopsy showed that he had been stabbed twice in the chest and once in the throat. Dr. Phatak stated that the stab wound to Prezton's neck was two-and-three-quarter inches deep. One of the stab wounds to his chest was two-and-three-quarter inches

9

deep and the other was three-quarters of an inch deep. Dr. Phatak testified that the cause of Prezton's death was "the stab wound of the neck and to the chest." Dr. Phatak confirmed that Prezton's stab wounds were consistent with being stabbed by a knife.

From the evidence—including his admission that he repeatedly thrust his hand holding the knife backward to break free from Prezton and the multiple, fatal stab wounds inflicted on Prezton—the jury could have reasonably inferred that Appellant intended to either kill or inflict serious bodily injury on Prezton in an effort to return to his frenzied stabbing of Tanya, out of anger at Prezton for thwarting the stabbing, or to escape the scene. We conclude that a rational fact finder could have found beyond a reasonable doubt that, at the time Appellant stabbed Prezton, either (1) Appellant intentionally or knowingly caused Prezton's death by stabbing or cutting him with a knife, or (2) Appellant intended to cause serious bodily injury to Prezton and committed an act clearly dangerous to human life, namely, stabbing or cutting Prezton with a knife, which caused Prezton's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jones*, 338 S.W.3d at 743. We hold that the evidence is sufficient to support the judgment of conviction for the offense of murder.

We overrule Appellant's first issue.

**Charge Error**

In his second issue, Appellant contends that the trial court erred by charging the jury on the doctrine of transferred intent.

The doctrine of transferred intent, as codified in Penal Code section 6.04, provides, "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different person or property was injured, harmed, or otherwise affected." TEX. PENAL CODE ANN. § 6.04(b) (Vernon 2011). The statutory principle of transferred intent is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person. *Delacerda v. State*, 425 S.W.3d 367, 397 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

> A classic example of the application of the transferred intent doctrine is "the act of firing [a gun] at an intended victim while that person is in a group of other persons. If the intended person is killed, the offense is murder. If a different person in the group is killed, the offense is murder pursuant to Texas Penal Code § 6.04(b)(2) . . . ."

*Id.* (quoting *Roberts v. State*, 273 S.W.3d 322, 330 (Tex. Crim. App. 2008) (addressing transferred intent in capital murder case in which requisite mental state was specific intent to kill)). Under Section 6.04(b), a defendant can be held "criminally responsible"—that is, guilty—for the death of another even if he did not intend to harm the victim so long as he caused the actual victim's death while

11

acting with the intent to kill a different person. *Chimney v. State*, 6 S.W.3d 681, 700 (Tex. App.—Waco 1999, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 6.04(b).

During trial, Appellant objected to the inclusion of the transferred-intent instruction, arguing that there was no evidence showing that Appellant intended to stab Tanya but missed, stabbing Prezton instead. Appellant asserted that the evidence showed that he was not in close proximity to Tanya when Prezton was stabbed. Appellant points to the evidence indicating that, as Prezton tackled Appellant, the two of them fell into the closet "nowhere near Tanya." Appellant asserted that was where Prezton was stabbed. He claimed, "[T]here is no rational or reasonable inference that could be drawn that he's attempting to stab or cut Tanya" at the time Prezton was stabbed.

The State pointed out that the evidence had not shown "exactly at what point" Prezton was stabbed. The State asserted, "[I]t's reasonable for the jury to infer that he was stabbed in the process of that struggle when he tackled the defendant to the ground in the process of stabbing Tanya." For this reason, the State further asserted, "[T]here is sufficient evidence to warrant a transferred intent charge to the jury."

The trial court overruled Appellant's objection and instructed the jury as follows with regard to transferred intent:

Regarding this instruction, the jury was instructed as follows:

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person or property was injured, harmed, or otherwise affected.

Now, if you believe from the evidence beyond a reasonable doubt that the defendant, Dene Ray McCarter, in Harris County, Texas, on or about the 16th day of June, 2013, did then and there unlawfully and intentionally or knowingly intended to stab or cut Tanya [], intending or knowing that serious bodily injury or death would occur to Tanya [], but instead stabbed or cut Prezton [], causing the death of Prezton [] with the use of a deadly weapon, namely, a knife, then you will find the defendant guilty as charged in the indictment.

Here, even if we assume, without deciding, that the trial court erred by submitting the jury instruction on transferred intent, such error does not require reversal. When, as here, an appellant has properly preserved the claimed error by a timely objection to the charge, the conviction will require reversal only if the error resulted in "some harm" to the appellant. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984). The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

To determine whether Appellant suffered some harm, we consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) counsel's argument; and (4) the whole record. *Abdnor v. State*, 871 S.W.2d 726, 733 (Tex. Crim. App. 1994); *Almanza*, 686

13

S.W.2d at 171. The "some harm" test does not mandate reversal on a showing of possible harm; rather, it requires that actual harm be established. *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999). The appellate court reviews the evidence and any part of the record as a whole that illuminates "the actual, not just theoretical, harm to the accused." *Id.*; *Almanza*, 686 S.W.2d at 174. "The harmfulness of error in the jury charge should be measured, at least in part, against the likelihood that the jury's verdict was based on an available alternative theory of culpability that was not affected by the erroneous portion of the charge." *Loredo v. State*, 130 S.W.3d 275, 283 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Here, the jury charge, when considered as a whole, weighs in favor of finding no harm. The charge contained alternative application paragraphs to the transferred intent instruction. Specifically, the jury was instructed that it could find Appellant guilty of the offense of murder (1) if it found that Appellant had intentionally or knowingly caused Prezton's death by stabbing or cutting him with a knife; or (2) if it found that Appellant had intended to cause serious bodily injury to Prezton, and had caused the Prezton's death by intentionally or knowingly committing an act clearly dangerous to human life, namely, by stabbing or cutting him with a knife. As discussed in our sufficiency-of-the-evidence analysis above, the evidence was sufficient to support the judgment of conviction under either of these alternate theories. The evidence showed (1) Appellant stabbed Tanya 27

14

times; (2) Prezton stopped the attack by jumping on Appellant and the two tumbled into the closet; (3) Appellant admitted thrusting his hand holding the knife repeatedly back toward Prezton in a stated effort to remove Prezton; (4) Prezton sustained three stab wounds, one to his neck and two to the chest, as well as a incised wound to his hand; (5) the stab wounds to Prezton's neck and chest caused his death; and (6) Appellant quickly fled the scene.

We agree with the State that, to the extent that the instruction on transferred intent was erroneous, it was harmless because the jury did not need transferred intent to render a guilty verdict in this case on the alternate theories; that is, the verdict was supportable on the alternate theories in the charge. *See id.* (comparing transferred intent instruction with law of parties instruction, and holding that erroneous instruction on transferred intent is only harmful when transferred intent is necessary for jury to decide the case).

Moreover, although it discussed transferred intent during closing argument, the State did not over-emphasize transferred intent and thoroughly discussed the alternate theories. During its argument, the defense discussed and argued why the evidence did not support a guilty finding under transferred intent. Given the record as a whole, we hold that any error in submitting the transferred intent instruction did not result in any harm to Appellant; thus, any error is harmless. *See id.*; *see also Almanza*, 686 S.W.2d at 174.

15

We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. TEX. R. APP. P. 47.2(b).